Pearson, J.
 

 There must necessarily be a reference in this case, as the defendant admits the right of the plaintiffs to have an account.
 

 Two questions were urged, with a view to obtain a declaration of the opinion oflhe Court, in aid of the Master in stating the account:
 

 , First : The plaintiffs insist, that the defendant is not entitled to a credit for any amount, as a salary in compensation for his services during the time he superintended and managed the estate ; nor to a credit for any sums,that he may have advanced, over and above the profits of the farm, for the maintenance of Philip Raiford and his famil}r, and the education of his children, and the other purposes of the trusts; because, as the}'' allege, by the-true meaning of the deed of trust, the defendant undertook and engaged, that the income should suffice for the support of the said Philip Raiford and his family, after all costs and charges.
 

 Unless positive words forbid it, such a construction-will be given to a deed, as to make its provisions reason-ble. It is not reasonable for a man to “work for nothing and find himself;” and yet, such would be the effect of the construction contended for by the plaintiffs.
 

 If, in the division, after the death of his father, a larger share was given to the defendant than to any of the other children, that would readily suggest itself, as a reason for his agreement to work without any direct or indirect' compensation, and,, possibly, also as a reason for his undertaking and engaging, that the income should suffice for the support of his father and famil}r. There is, how-, ever, no such provision in the deed, and after the death of his father, it is made the duty of the defendant to divide the land, negroes, stock, &c., equals among all of
 
 *496
 
 the children, except Sarah Jane, “reserving to himself the share which would by law fall to him, as in case of intestacy of said Philip.” The trust declared by the deed is, that the defendant will cultivate the tracts of land, or rent them and hire out the negroes, and apply the proceeds to the support and maintenance of the said Philip and his family during his life, in a manner equal to that to which they had been used, or so much thereof, as may be necessary for that purpose, and at his death, divide the land, negroes, die. If the deed stopped here, there might be some ground for the conjecture, that the parties believed the proceeds would certainly be sufficient for that purpose, and leave an excess ; and that, as the excess or accumulation from the income is not expressly mentioned in the clause directing a division, the intention was, that this excess should be the compensation of the defendant for insuring, that the proceeds would be sufficient for the support, &c. But, when taken in connection with the covenant of the defendant, no doubt is left as to the proper construction ; for there, to the stipulation, that he will apply the proceeds, or so much thereof as may be necessary, to the support, áte., is added, “after
 
 securing to himself
 
 such sum as may be reasonable for his cost and charges,” <^c., and the excess is directed to be applied to defray the expense of educating the children in a suitable manner, if sufficient for that purpose. It must, therefore, be declared to be the opinion of this Court, that, in taking the account, the defendant will be entitled to a credit for such an amount, as may be a reasonable compensation for his services, and for any sums advanced by him for the purposes of the trust, over and above the profits of the farm, or what ought to have been made by proper management.
 

 Secondly : The plaintiffs insist, that, as the slave George is included in the deed,of trust, the defendant is not at liberty to set up title in himself, or, at all events, that he
 
 *497
 
 is chargeable with his value at the death of Philip Raiford, as an advancement.
 

 The defendant insists, that he is not bound to bring George into the division as a part of the trust property, because, as he alleges, the said slave belonged to him at the death of his father by force of a deed of gift, executed by his father long before the execution of the deed of trust» and that he mentioned this fact to the gentleman, who drew the deed of trust, and was told by him, that it was proper to put George in the deed, as his father was entitled to his services during his life, but that this would not affect the rights of the defendant under the deed of gift after his father’s death. He also insists, that he ought not to be charged with the value of George as an advancement ; but, if he is charged, the value of his interest should be fixed at the date of the deed of gift, May 1828, his interest being a remainder in a negro boy, fourteen years of age, after the life estate of his father.
 

 The deed of gift was'duly executed in May 1823, and registered in August 1834. By it, Philip Raiford gives to the defendant the slave George, reserving to himself a life estate. The deposition of Mr. Husted, who drew the deed of trust, fully sustains the allegations of the answer. This proof and the circumstances clearly show, that it was not the intention of the parties, that George should be embraced in the division to be made by the defendant after the death of his father, although the general words in the deed of trust “lands,
 
 negroes,
 
 stock,” &c., would include him. Such being the manifest intention, there is no doubt, that the defendant is at liberty in this Court to set up his title under the deed of gift.
 

 The next question is, ought George to be accounted for by the defendant as an advancement?
 

 The declaration of trust provides, that, after the death of Philip Raiford, the lands, negroes, stock, &e., or the proceeds of sales, (if a majority of the parties interested
 
 *498
 
 prefer
 
 to
 
 have a sale,) shall be equally divided “among1 all of my heirs and distributees, except Sarah Jane Howell, in the same manner, and according to the rules of descent and distribution in intestate’s estates,” and in the covenant of the defendant, set out in the deed, after providing for the division, these words are added, “reserving to himself the share, which would by law fall to him as in case of intestacy of the said Philip.”
 

 In the case of
 
 Croom
 
 v.
 
 Herring et al. 4
 
 Hawks 393, the testator directed the proceeds of the sale of real and personal estate ‘ to be divided among all of my heirs, agreeable to the statute of distribution of intestate’s estates.” Some of the children had been advanced ; but the main question was, who should take the personal estate under the word “heirs.” After a learned discussion of the meaning of the word “heirs,’ Judge Henderson concludes, that, in reference to personal estate, it did not mean “children,” “next of kin,” or heirs at law, or have any fixed or definite meaning of itself, but as there used, with a reference to the statute of distribution, its meaning was heirs
 
 quoad the property;
 
 in other words, the persons, who would under the statute succeed to the personal estate, or as we now express it in one word, instead of a phrase, “the distributees and that the statute was referred to, “to designate, who were meant by the word heirs ;” and he held, (with great hesitation) that, having answered this purpose, the reference
 
 to
 
 the statute could not also be made to answer the purpose of pointing out the manner of division of that property,
 
 in connection with
 
 the other property, which had been advanced, but must be confined strictly to that property and exclude advancements. Page 401-2. This conclusion is adopted at the end of an elaborate argument upon the other question, and his train of reasoning is not as clearly developed as was usual with that very able Judge. He seems to have had a vague notion, that, because the reference to the
 
 *499
 
 statúte was made to answer one purpose, it ought not to be so far taxed as to make it answer a second, probably from some undefined analogy to the doctrine in reference to the statute of uses, by which it is held, that the statute, having carried the legal estate to the first use, could not carry it to the second. But, however that may be, he expresses great hesitation ; and it may well be questioned, whether the reference to the statute ought not to have been permitted to answer the
 
 whole purpose,
 
 as well to point out the manner of the division, as to designate the persons, instead of being stopped at the half way point.
 

 At all events, that decision has no application to the point now under consideration. There, the word “heirs” was used in reference to personal property. Here,, the word “heirs” is used in reference to land, and the word “distributees” in reference to personal property — both words of definite legal meaning, appropriately used; so that here, the maker of the deed has designated the persons himself, leaving no office for the reference to the statute of distributions to prefer, unless to point out the manner, in which the division is to be made, and he expressly invokes the canons of descent and the statute of distributions for that purpose, by the words, “in the same manner, and according to the rules of descent and distribution of intestate’s estates.” But so far as the defendant is concerned, there cannot be a question ; for, he is “to reserve to himself the share, which would fall to him, as in case of intestacy of the said Philip.” This of necessity brings in the advancement.
 

 The remaining’question is, as to the time when the value must be fixed upon the slave George. It is clearly settled, that the value at the time of the advancement is the sum to be accounted for. The plaintiffs contend, that the defendant should account for the value at the death of Philip Raiford, This is not consistent with the idea of its being an advancement; for, if the gift did not take
 
 *500
 
 effect until the death of the parent, then it could not be an advancement: For advancements must be made during the
 
 life time
 
 of the parent. We think it clear, that the gift took effect at the date of the deed of gift in 1828. The enjoyment or right of possession was future, but the deed passed a present vested estate — such as the defendant might have sold and converted into money and such as could have been taken under a
 
 fi. fa,.
 

 The defendant must be charged with the value at that time, subject to the life estate of his father.
 

 There must be a reference to take the account as prayed.
 

 Per Curiam.
 

 Ordered accordingly.